## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA R. QUIGGINS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 11-CV-82-TLW ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Cynthia R. Quiggins ("plaintiff") requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 9). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that plaintiff was not disabled. On appeal, plaintiff asserts the ALJ failed to: (1) properly consider the medical source opinions; (2) perform a proper step five determination; and (3) perform a proper credibility determination. (Dkt. # 18 at 2). For the reasons discussed below, this Court REMANDS the decision of the Commissioner.

## Procedural History

On November 12, 2008, plaintiff filed an application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 216(i), 223(d), and 1614(a)(3)(A). Plaintiff alleges disability due to lupus, memory loss, rheumatoid arthritis, and breast cysts beginning June 1, 1994. (R. 153). After being denied benefits, plaintiff filed a written request for a hearing before an ALJ on May 9, 2009. The ALJ conducted a hearing on January 11, 2010. (R. 29-69). On January 27, 2010, the ALJ issued her decision, denying benefits. On March 30, 2010, plaintiff appealed this decision to the Appeals Counsel. (R. 7). Following the decision, the Appeals Council upheld the ALJ's decision and denied plaintiff's request for review on December 15, 2010. (R. 2-6). The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On February 7, 2011, plaintiff timely filed the subject action with this Court. (Dkt. # 2).

## Standard of Review and Social Security Law

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff was born on June 23, 1965, and was 44 years old at the time of the ALJ's decision on January 27, 2010. (R. 126, 132). She dropped out of school after the ninth grade and

3

never obtained a GED.[1] (R. 43). Plaintiff's prior work history consists of employment as a waitress/server (SVP 3, light exertion), a cashier (SVP 3, light exertion), a kitchen worker (SVP 2, medium exertion), and a general laborer (SVP 2). (R. 64-65). Plaintiff alleges a disability onset date of June 1, 1994. (R. 126, 132). Plaintiff is divorced and currently lives with her teenaged son. (R. 41). Plaintiff alleges that lupus, memory loss, rheumatoid arthritis, migraine headaches, and breast cysts culminated in her becoming disabled. (R. 153). She stated she was diagnosed with lupus in 1994 by a physician at "the OU clinic." (R. 51). At the hearing, plaintiff submitted a medication list, dated January 11, 2010, showing she currently is taking Lortab, Soma, Lyrica, Oxycodone, Paxil, and Klonopin. (R. 20, 196).

At the January 11, 2010 hearing, plaintiff testified she worked at various restaurants through 2000, but had to stop due to "a lot of problems with my inside of my stomach." (R. 41). She drives about once every two months. She began computer classes at Tulsa Community College, but stopped due to "problems with [her] insides." (R. 44). Plaintiff said the main problem preventing her from working is her "chronic pain." Id.

Plaintiff's medical records range in time from November 2004[2] to December 2009, and include records from plaintiff's treating physicians, emergency room visits, medical testing, and

---

[1] In her Disability Report – Adult, plaintiff noted that she completed the twelfth grade, completing high school in 1982, but testified at the hearing she dropped out of school in tenth grade. (R. 43, 157).

[2] Upon questioning by the ALJ regarding medical records prior to 2004, plaintiff testified she does not have any medical records from the 1990s, when she was allegedly diagnosed with lupus. Oklahoma requires medical records be retained for only ten years after the last visit of an adult. See http://www.okmedicalboard.org/download/522/Medical_Records_Retention.pdf (last visited September 4, 2012). Plaintiff was 29 in 1994 when she alleges the initial lupus diagnosis, and filed her claims for Title II and XVI benefits in 2008, 14 years later. No records exist for the adjudicated time period relative to plaintiff's Title II claim, leaving this Court nothing to review. Therefore, the Court's analysis will focus on plaintiff's Title XVI claim.

4

state consultative examinations. (R. 203-281, 282, 283-312, 313-565, 570-576, 577-580, 581-594, 595-608, 609, 610-617, 618-647, 649, 650-653, 654-660, 661-665, 666-689).

Plaintiff frequently visited the emergency rooms of several hospitals with complaints of migraine headaches, generalized pain after falls climbing fences, pain from a pool table falling on her, one motor vehicle accident, and falling out of an attic. (R. 203-281, 313-565). Plaintiff received narcotic pain relievers at most visits and was discharged home in stable condition. Testing performed throughout plaintiff's medical records returned consistently normal results. (R. 344, 350, 371, 379, 439, 450, 461, 511, 550). On two separate occasions, plaintiff became agitated with staff at Mayes County Medical Center when doctors refused to give her narcotic medications. (R. 526, 544). One note states plaintiff requested morphine for migraine pain, and refused treatment when staff attempted to discuss alternatives to narcotic treatment of her pain. (R. 526).

## Decision of the Administrative Law Judge

In assessing plaintiff's qualifications for disability, the ALJ determined plaintiff was insured for Title II benefits through September 30, 1996.[3] At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 1994. The ALJ found severe impairments of complex regional pain syndrome and fibromyalgia at step two. Also at step two, the ALJ found plaintiff's alleged mental issues to be non-severe. (R. 15). Then, at step three, the ALJ stated she considered "all of the Listings of Impairments" and none of plaintiff's impairments met or equaled a listing. She also performed the "special technique" at step three to decide that plaintiff's mental impairments did not meet or equal listings 12.04 (affective disorders), or 12.06 (anxiety-related disorders). (R.

---

[3] As noted *supra*, the Court finds no records within the relevant adjudicated period to evaluate plaintiff's Title II claim, therefore the undersigned is only able to analyze her Title XVI claim.

16-17). Before moving to step four, the ALJ found plaintiff had the residual functional capacity ("RFC") to:

> … perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which includes 20 pounds occasionally and 10 pounds frequently; standing and/or walking for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; pushing/pulling limited to 20 pounds occasionally and 10 pounds frequently; except no overhead reaching.

(R. 17). At step four, the ALJ determined plaintiff could not return to any of her past relevant work. Relying on testimony from a vocational expert at step five, the ALJ determined plaintiff would be able to perform the light work of production inspector and press machine operator, and the sedentary jobs of order clerk and grinding machine operator, resulting in a finding of not disabled. (R. 22-23).

### Issues

Plaintiff's allegations of error are as follows:

1. The ALJ failed to properly consider the medical source opinions;
2. The ALJ failed to perform a proper step five determination; and
3. The ALJ failed to perform a proper credibility determination.

(Dkt. # 18 at 2).

### Discussion

Plaintiff argues the ALJ failed to properly consider the opinion of treating physician Robin Western, M.D., that plaintiff "cannot work on a full time basis." Id.. Essentially, plaintiff's argument boils down to a claim that the ALJ failed to "perform the two prong analysis" to properly weigh a treating source opinion mandated by Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir.2003). (Dkt. # 20 at 1). The undersigned agrees.

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 Fed.Appx 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527, and § 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment

>   provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished)[4].

If a treating physician's opinion addresses an issue ordinarily reserved to the Commissioner, such as a claimant's ability to work or the ultimate question of disability, the ALJ may not give controlling weight to that opinion. See Butler v. Astrue, 410 Fed.Appx. 137, 142 (10th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)) (unpublished). While a treating physician's opinion is ordinarily entitled to controlling weight, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p. The ALJ may not ignore those opinions but "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record," using the factors set forth in 20 C.F.R. § 404.1527(d), and § 416.927(d), cited supra.

Although the ALJ's decision to give Dr. Western's opinion "little weight" is certainly reasonable and well supported by the record, the Court is not permitted to re-weigh the evidence. For instance, the ALJ discussed relevant evidence from two doctors who examined plaintiff at

---

[4] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

Sweeten Medical Clinic, but the ALJ failed to tie this evidence to her decision to give Dr. Western's opinion only "little weight." (R. 20). The ALJ also discussed in detail the consultative examinations plaintiff received from Ronald Schatzman, M.D. and Beth Jeffries, Ph.D., but again failed to specifically relate this evidence to Dr. Western's opinion. The undersigned notes that on December 17, 2008, Dr. Western signed a "Treating Physician Mental Functional Assessment Questionnaire" form wherein he affirmed he was plaintiff's treating physician for a mental condition. (R. 284). On this form, Dr. Western indicated plaintiff did not "have a mental condition that impose[d] more than minimal limitation" on her functional capacity. Dr. Western then changed this opinion two months later in his February 11, 2009 opinion letter, claiming plaintiff suffered "from a severe anxiety disorder," and that she had been left "emotionally handicapped." (R. 618). Yet, there are no indications of any changes to plaintiff's condition in Dr. Western's treatment notes to support such a dramatic change in diagnosis.

Nonetheless, the Court is not permitted to interpret medical records for the ALJ. See Clifton v. Chater, 79 F.3d 1007, 1008 (10th Cir. 1996) (holding that the court will not "engage in the task of weighing evidence in cases before the Social Security Administration."). In addition, the Court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). See also Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

This error leaves the Court with no means of properly evaluating the ALJ's decision, without engaging in post-hoc rationalization and without interpreting the medical records. Therefore, the Court must remand this issue to the ALJ to properly perform the two prong analysis of Dr. Western's opinion, based on a thorough review of his treatment notes.

The Court finds it unnecessary to analyze the second allegation of error, because the ALJ's consideration of Dr. Western's records may affect her step five findings. The ALJ's credibility determination is affirmed, unless the ALJ determines that her prior finding is affected by her re-consideration of Dr. Western's records.

## Conclusion

The decision of the Commissioner finding plaintiff not disabled is REVERSED and REMANDED as set forth herein.

SO ORDERED this 10th day of September, 2012.

_____
T. Lane Wilson
United States Magistrate Judge